E-FILED
Wednesday, 13 January, 2010  09:30:06 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Elizabeth M Martin
P.O. Box 996
Urbana, IL  61803-0996

_____
Plaintiff(s)

vs.

Cunningham Children's Home
301 North Cunningham Ave
P. Box 818
Urbana, IL  61802

_____
Defendant(s)

FILED

JAN 12 2010

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

Case No: 10-2006

PRO SE COMPLAINT AGAINST EMPLOYMENT DISCRIMINATION, UNDER TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e-5

I.     PREVIOUS PROCEEDINGS BEFORE THE EQUAL EMPLOYMENT
       OPPORTUNITIES COMMISSION (EEOC)

   A.  Have you filed a charge before the federal Equal Employment
   Opportunities Commission (EEOC) relating to this claim of employment
   discrimination?

   (X)  YES

   (  )  NO

   B.  If your answer is YES, describe the EEOC proceeding:

       1.  Parties to the previous EEOC proceeding:

           Petitioner (s)  The EEOC issued the determination that based
           on its investigation, the EEOC was unable to conclude
           that the information obtained establishes violations of
           the statute. This does not certify that the respondent
           is in compliance with the statutes. No finding is
           made as to any other issues that might be
           construed as having been raised by this charge.

Page 2

Respondent (s) _____

_____

_____

2. Location of EEOC office that handled your charge *Chicago District Office)*

*500 West Madison St, Suite 2000, Chicago, IL 60661*

3. Docket or case number of your charge: *846-2009-48697*

4. Disposition (what was the final result of your charge):_____

_____

_____

_____

_____

5. Has EEOC written you a right-to-sue letter (telling you that you have the right to sue in a United States District Court if you are dissatisfied with the disposition of your charge)?

(X) YES

( ) NO

6. Date of filing charge before EEOC: *September 14, 2009*

7. Date of disposition by EEOC: *October 19, 2009*

C. Attach copies of all documents you possess relating to the EEOC proceeding, ESPECIALLY YOUR RIGHT-TO-SUE LETTER.

II.   PREVIOUS LOCAL, STATE OR FEDERAL PROCEEDINGS OTHER THAN EEOC

A. Have you begun other legal proceedings before state or local courts or agencies, or a federal court (but NOT the EEOC) relating to your claim of employment discrimination?

( ) YES

(X) NO

2

Page 3

B.  If your answer is YES, describe each legal proceeding:

    1.  Parties to the previous legal proceeding:
       Plaintiff(s) or petitioner(s) _____

       _____

       _____

       Defendant(s) or respondent(s) _____

       _____

       _____

    2.  Name of court or agency: _____

       _____

       _____

    3.  Docket or case number: _____

    4.  Name of the judge or hearing officer: _____

       _____

    5.  Disposition (for example: Was the case dismissed?
       Who won?  Was there an appeal?  Is the appeal pending
       or final? _____

       _____

       _____

       _____

       _____

    6.  Date of beginning previous proceeding:_____

    7.  Date of disposition of proceeding:_____

NOTE:  If there was more than one previous legal proceeding, excluding an EEOC proceeding, describe them on separate sheets of paper.  Follow the outline above, label the sheets clearly, and attach them to this pro se complaint.

Page 4

C.    Have you attached separate sheets regarding previous state, local or federal legal proceedings (other than EEOC)?

( ) YES

☒ NO

III.    PARTIES TO YOUR PRO SE COMPLAINT OF EMPLOYMENT DISCRIMINATION

A.    Plaintiff(s)

1.  Your full name: Elizabeth M Martin

2.  Your address: P.O. Box 996, Urbana, IL 61803-0996

3.  Names and addresses of other plaintiffs, if any (You should name other plaintiffs only if they were petitioners with you in a previous EEOC proceeding, or else if EEOC began a previous proceeding on behalf of you and them): Non-applicable

(Use a separate sheet if necessary; label it clearly if so)

B.    Have you attached a separate sheet naming other plaintiffs?

( ) YES

☒ NO

C.    Defendant (s) (You should name here the first-named respondent, or else its successor, in the previous EEOC proceeding brought by you or on your behalf):

1.  Full name (individual or firm): Cunningham Children's Home

4

Page 5

2. Business address: 1301 North Cunningham Ave, Po Box 878, Urbana, IL 61802

3. Job position (if individual) _____

_____

4. Status as an entity (if defendant is a business firm):

( )  Corporation

( )  Partnership

( )  Sole Proprietorship

( )  Other _____

(If you do not know this information, and you cannot find out by reasonable means, ask the defendant for it.  If the defendant will not tell you, leave this section blank.)

5. Names, business addresses, and job position or entity status of other defendants, if any (you should name additional defendants only if they were named as respondents in a previous EEOC proceeding brought by you or on your behalf): _____

_____

_____

_____

_____

(Use a separate sheet if necessary; label it clearly if so)

D.    Have you attached a separate sheet naming other defendants?

( )  YES

X  NO

5

Page 6

IV.   STATEMENT OF YOUR CLAIM OF EMPLOYMENT DISCRIMINATION

A. Were you:
( ) Not hired?
(X) Discharged?
( ) Suspended?
( ) Demoted?
( ) Denied Promotion?
( ) Denied Wage Increases?
( ) Other (please specify) _____

_____

B.   State here as briefly, concisely and clearly as possible the essential facts of your claim. Take time to organize your statement; you may use numbered paragraphs if you find it helpful. Include precisely how each defendant in this action is involved. Include the names of other persons involved who are not defendants; give dates and place. Concentrate on describing as clearly and simply as possible the employment practice you allege to be illegal, and how it discriminated against you. IT IS NOT NECESSARY TO MAKE LEGAL ARGUMENTS OR CITE ANY CASES OR STATUTES. IN MOST CIRCUMSTANCES, THIS ONLY MAKES THE CLAIM OF A LAYMAN MORE DIFFICULT TO UNDERSTAND. AS MUCH AS POSSIBLE, LET THE FACTS SPEAK FOR THEMSELVES.

Around April or May of 2009, the Cunningham Children's Home placed an advertisement in a local newspaper for Night Milieu Counselors. I saw the advertisement in the paper and applied for one of the counseling positions.

I was contacted by Amy Acree by email for me to do an pre-employment questionaire over the Internet. Amy Acree is an Employment Specialist with Cunningham Children's Home. I completed the pre-employment questionaire and sent it back in.

After that was done, I was contacted by Todd D. Wagner, Night Milieu Counselor Supervisor by email about setting up and Interview. I set up an Interview time with Todd D. Wagner and had a detailed face to face Interview with him approximately a week or two after I completed the online pre-employment questionaire. During my Interview with Todd D. Wagner he told me that I interviewed well and that if I was hired it

... would be bad because I had no experience in counseling / psychology / clinical counseling ②

* not hearing from Todd D. Wagner about whether or not I was hired for awhile and making some follow-up emails and a call or two to Wagner to find out the status of my hiring after my Interview; Wagner had said that a committee would decide in Human Resource; I also found out that another of the same job - Night Milieu Counselor had opened up.

* On June 22, 2009 I was called by Amee Acree of the Cunningham Children's Home about employment and she left me a message. I called Amee Acree back at the number that she had given and she identified herself and I identified myself by first and last name and let her know that I was returning her call.

¶ Amee Acree told me that I was being hired for the position of Night Milieu Counselor, if I ●● wanted the job. I let Amy Acree know that I did want the job. So, next we set up a time for me to come in and do my New Hire paperwork, as Amy Acree specifically stated it. This was going to be an overnight job so Amy Acree also told me that the specific hours that I would be working would be from 11 p.m. - 9 a.m. 4 days on 14 days off with a rotating schedule, when I asked Amy Acree this on June 22, 2009 during our talk about me talking the counseling job. Todd D. Wagner had already told me that the Night Milieu counseling job would be an overnight position with a 4 day on and 14 day off rotating schedule, he just did not know what hours specifically, according to Todd D. Wagner, I would be working at the time I interviewed with him for the position in May of 2009.

¶ Todd D. Wagner also told me that there would be a training therefore a breaks with the job before I actually started working

③

without training, but Wagner did not tell me that that training would be for 3 weeks from 9 A.M. until 5 P.M.. I did not find this out until June 24, 2009 when I did my New Hire paperwork with both Amy Acree, primarily, and also Katrina Gordon a Human Resources Specialist on June 24, 2009, which is the day I completed a large portion of my New Hire paper for my position as a Night Milieu Counselor at Cunningham Children's Home.

Because I would have had to have trained in the morning going into the evening for 3 weeks, I had to rearrange my schedule around at my then long-term department store job because I worked days at the department store. I had to talk to Human Resources and management at my department store job about working less and different hours then the part-time only hours that I already worked there in order to be able to do the 3 weeks of 9 A.M. until 5 P.M. training at the Cunningham Children's Home for my new job there. Requesting of Human Resources on my department store job to be able to work different hours in order to be able to accommodate the Cunningham Children's Home jeopardized my department store job where I had already been getting harassed by management, co-workers and customers for years. This was also a fact that I told Todd D. Wagner during my May of 2009 Interview with him is when Wagner Interviewed me for the Counseling position that even though I have never lived in a home like the Children's Home, I could relate to some of the problems the residents had because myself, and my mother and my brother have been harassed for all of our lives and a certain number of other people that we have encountered in our lives have tried to make us feel like outcasts. I let Wagner know this during the Interview I had with him because I wanted to let him know that I can relate to other people having it hard and very difficult in life, as I can relate very much so.

The Cunningham Children's Home did not care how my department store job was jeopardized because of them. Amy Acree demonstrated this after I had completed a large portion of my New Hire paperwork on June 24, 2009 with Gorgon and Acree, when the Cunningham Children's Home pushed the start date for the New Hire training back a week without telling me or consulting with me and how it would affect my other work schedule and work schedule period, just because all of the other New Hires conveniently could not start the training on the scheduled set training day and week. Despite the fact that on June 24, 2009, Amy Acree told me that all of the New Hires set to start training when I was which would have been on July 6, 2009 at 9 A.M., were all suppose to be there at that time and on that day, no exceptions. I was talking to Amy Acree on the telephone after June 26, 2009 about getting my physical in even though I had up until July 6, 2009, the start date of New Hire orientation to get my physical completed as well as any paperwork that was not completed yet completed, Acree told me this on June 24, 2009, when Amy Acree told me about the week later change in the New Hire orientation start date, because she already had me on the telephone, Amy Acree said.

There was clearly no sympathy in Amy Acree's voice as she heard me tell her about the predicament that the Cunningham Children's Home pushing the new Hire orientation and training back from July 6, 2009 to July 13, 2009, and also by how Acree let me know in words that that is just how it goes.

Todd D. Wagner knew, because I told him during my Interview with him, that I had a long-term job at a department store that I wanted to keep at least until I got in my five years, if possible, as I was already at four and a half years, and my trying to keep my department store job did not interfere with my new job as a Night Milieu Counselor at the Cunningham Children's Home. Todd D. Wagner let me know during my Interview with him that my wanting to keep my department store job, if I wanted to, was not going to be a problem, because a lot of the Cunningham Children's Home employees had other jobs that they worked around working at the Cunningham Children's Home.

During my May of 2009 Interview with Todd D. Wagner for the Night Milieu Counselor position, I let

④

Todd D. Wagner know how much I looked forward to working in the social services/human services field and of how my family and myself have been harassed for all of our lives and just how difficult our lives have been and are. I assured Todd D. Wagner how he and everyone could be rest assured that I am a good, genuine, and sincere and honest person that I am, and that I would do my job well and appropriately, because I know what it is like being disadvantaged, but myself and my family have always remained good people and done what is correct.

Todd D. Wagner let me know the benefits of the Night Milieu Counselor job, and how he started out as a Night Milieu Counselor, and how he is now a supervisor. Todd D. Wagner did not tell me how much I would make as a Night Milieu Counselor. I found that out on June 24, 2009 when I did my New Hire paperwork with Gordon and Acree. But Wagner did give me a brief general overview of how the pay scale would work, during my Interview with him.

On the Employment Off New Hire paperwork that I was called by Acree to complete which ended up being on June 24, 2009, you can see where Todd D. Wagner gave his okay and signature on my hire for the Counselor position on June 2, 2009; Katrina Gordon from Human Resources gave her okay and signature on my hire on June 22, 2009. Katrina Gordon also filled in my pay rate for the Counselor position at the pay rate of $10.88 an hour for a B.A. Degree with no experience on the job. You can also see where my pay rate was whited out and a figure(s) changed by Katrina Gordon, as I asked Gordon about this On June 24, 2009, and Gordon acknowledged that another figure was originally written down by her and then changed.

I have included a photocopy of this Employment Offer that I have just written about that was signed by Wagner, Gordon and myself.

Taking a pre-employment drug test and physical was part of the employment process I was on June 24, 2009 by Amy Acree that needed to be completed by Cunningham Children's Home employees as a part of the hiring process. I took and passed my drug test that I took on on June 25, 2009. I took my physical on June 26, 2009 and passed everything on the physical, according to Brown (last name) the Carle Occupational Medicine employee that administered a large portion to the majority of my physical said that even though I had passed everything on my physical, she was not going to pass me on my physical unless I got a letter from my (then) treating physician because of the medication (Invega) that I had listed on the physical form as a medication I listed as having taken and being doctor prescribed faxed to Ginny Brown. The brown that was talking to me did not let me know that she was in face a different brown and not Ginny Brown. Ginny Brown is a different Carle Occupational Medicine employee from the Brown (last name) that administered a large part of my physical to me.

But I tried to explain to Brown of Carle Occupational Medicine that the Invega that I listed on the physical form was medicine that though I had been prescribed it by my (then) psychiatrist, I was not currently taking the Invega and my psychiatrist knew that because I could afford the Invega prescription he had given me, and my (then) psychiatrist only gave me out-dated medication and he had not given me any for awhile and I was out, and I only took 3 mg of Invega anyway, and I was only suppose to take 6 mg of Invega if I ran out of the out-dated 3 mg of Invega and I felt that I needed the Invega in the 6 mg dosage. Brown of Carle Occupational Medicine maintained her position that without a letter from my treating physician she (Brown) would not pass me on my Cunningham Children's Home physical.

Carle Occupational Medicine's Brown's actions were not only unwarranted, they were out of line, while she was telling me that she (Brown) would not pass me on my physical without a letter from my



treating doctor for the Invega I listed as taking because the Carle Occupational Medicine physical form asked patients what current medications they are on. As I already stated I was not even on Invega as a current medication and it did not indicate on the form what time frame Carle Occupational Medicine was describing as a current medication anyway. I listed Invega because I had taken Invega in the past at the time I took the June 26, 2009 Carle Occupational Medicine physical for the Cunningham Children's Home, and I am not a liar and did not want to be seen as a liar is why I listed the medicine Invega on the physical form in the first place.

So, right after my Cunningham Children's Home physical was over, I went looking for my (then) psychiatrist to explain my situation to him and ask him to write the letter for me to Ginny Brown of Carle Occupational Medicine that I needed in order to pass my physical for my employer (Cunningham Children's Home) in order to be able to keep my job.

After I got this information relayed to my (then) psychiatrist where he worked for pay, I saw my psychiatrist at a free clinic, because I could not afford to pay a psychiatrist, because I was always told at my psychiatrist's pay clinic when I tried to tell him this in person that he was not available to talk to me about the letter I needed, so I communicated with my psychiatrist through his staff at his pay clinic, primarily his nurse named Donna, at his paid clinic, with Donna his nurse contacting me, and me contacting Donna back.

Every time Donna contacted me she wanted something for my (then) psychiatrist from me. First, it was a copy of my job description that Donna wanted from me but she wanted me to give her permission to get that job description straight from my employer (Cunningham Children's Home), and I would not give Donna or my (then) psychiatrist permission, and this despite I had already left an almost exact word for word job description of my job description at the Cunningham Children's Home with my psychiatrist's staff at his pay clinic on June 26, 2009 and then I went back into the clinic after, but not long after June 26, 2009 also, but this time the exact word for word description from the job description that I had been given from the Cunningham Children's Home for Donna to give to my treating (then) psychiatrist.

Just after I left that word for word description of my Night Milieu Counselor job description for Donna for my treating doctor of the Invega I took, Donna contacted me again and wanted to know if I had a license. Donna did not specify what type of license my treating doctor wanted to see, so I took in my Driver's License. This time I was able to see and speak with Donna personally as before and showed her my legal and current state of Illinois Driver's License. As I was showing Donna my Driver' License, my (then) treating psychiatrist saw me and clearly ignored me and went on doing what he was doing.

The morning of June 30, 2009, Donna, my (then) treating psychiatrist's nurse contacted me and left me a message on my phone telling me that my treating psychiatrist was not going to be writing the letter that I needed because he did not feel comfortable doing that. Donna did not give any explanation as to why my treating psychiatrist felt the way he did and came to the conclusion that he did about my physical clearance letter I asked him to write in order for me to be able to keep my job at the Cunningham Children's Home. Nor did Donna say that I could call her back or try to reach my treating psychiatrist to ask why he concluded what he did and why he would not write my letter.

So, before I went to my department store job for my short afternoon shift there on June 30, 2009, I called Todd D. Wagner and Amy Acree and left messages for them on their answering machines that it was very very important that I speak with them and that what I had to speak with them about pertaining to the physical that I had taken for work (Cunningham Children's Home) and how I was looking



forward to starting work as a Counselor, and some times after my department store job got off that I needed to talk to either or both Wagner or Acree.

It was not until later in the day when Acree called me back and left a message on my telephone answering machine, because I was at work (department store job) at the time, telling me that she could meet me at one of the times that I had asked to meet her. Amy Acree did not say anything about Todd D. Wagner being at that meeting, like I also requested for him to be on Amy Acree's answering machine earlier in the day, and Amy Acree certainty did not say anything about someone other than herself being at the meeting that I requested with her (Acree) and Wagner.

When I was able to call Amy Acree back, I told her that I could get to the meeting with her and myself and asked her if Todd D. Wagner would be there? Amy Acree would not answer my question and got off the telephone.

So, I got to the meeting that Amy Acree lead me to believe would be between herself and myself early, so the Cunningham Children's Home receptionist Zook (last name) had me wait in the hallway. Eventually two females came down to where I was and lead me into a room to talk. One of the females was Amy Acree, the other female I had not seen before, but she identified herself as Krista Borbely, Director of Human Resources, and gave me her card (I have enclosed photocopies of Borbely, Acree and Gordon's business cards that they gave me at different times throughout all of this.).

I was barely inside the room off of the hallway when Krista Borbley informed me that the Cunningham Children's Home uses Carle Occupational Medicine to do their employees physicals for them and that I had not passed mine, so they (the Cunningham Children's Home) was having to rescind my job offer. I told Krista Borbely and Amy Acree that that is why I had requested the meeting with Amy Acree and Todd D. Wagner so that I could try to talk with them about some stuff that was going on (Amy Acree let Krista Borbely do the talking. I am assuming that Acree was there as a witness for what Krista Borbely was saying to me.). I also looked at Amy Acree and told her that I thought that the meeting was going to be between herself and myself and maybe Todd D. Wagner, as (AcAcree) stated and inferred on the telephone when I spoke to her. I let both Borbely and Acree know that I had a right to know that Borbely was going to be there in advance of me going to meeting, of which no one told me, before I came to the meeting. I had a right to know in advance, of which I did not, who would be there representing the Cunningham Children's Home's interests against my interests. Krista Borbely repeated what she had said about Carle Occupational Medicine screening for the Cunningham Children's Home employees physicals, and that I had not passed my physical, therefore my job offer had been rescinded. Amy Acree said nothing in my defense. She just nodded her headed both times in agreement with Krista Borbely telling me that I no longer worker for the Cunningham Children's Home.

I asked Borbely and Acree if I could have 10 minutes to explain my position and I started talking because neither said that I could not. I told them how my father walked out on my family before I was born and how I like a lot of people and students suffer from depression and a lot of stress, and for reasons I did not know why my psychiatrist would not write the letter I needed to pass my physical, and I tried to tell Acree and Borbely how Brown of Carle Occupational Medicine said that I needed a doctor's note because of the medicine I took and that the medicine was in the past and no records of mine need be released just a letter be written from my treating doctor to go with my physical or else I would not pass my physical, and I did not know again why he would not write my letter.

Krista Borbely went from interjecting that maybe I should talk to my doctor and then come back to talk to them (Cunningham Children's Home), to telling me again that my job offer was rescinded. I left the



room that I was in and the Cunningham Children's Home in front of both Acree and Borbely in tears.

The Cunningham Children's Home, as well as Carle Occupational Medicine and my (then) treating psychiatrist and others involved in all of this apparently saw me as being incapable or unfit of working as a Counselor because I am mentally ill, but did not have the respect for me or my stable condition they did not accept to be such or respect to tell me so. They would all unjustly see that I lost a counseling job that I was qualified for and fit to work and had a right to keep and go on and work.

There is a President's Council on Mental Illness that states that:

> President George W. Bush announced the creation of The President's New Freedom Commission on Mental Health at the University of New Mexico in Albuquerque on April 29, 2002. In his address, the President stated that "our country must make a commitment: Americans with mental illness deserve our understanding, and they deserve excellent care."
>
> President Bush identified obstacles to quality mental health care. One such obstacle is the stigma that surrounds mental illness, "a stigma caused by a history of misunderstanding, fear and embarrassment."
>
> The President concluded by saying, "We must work for a welcoming and compassionate society, a society where no American is dismissed, and no American is forgotten.
>
> "This is the great and hopeful story of our country, and we can write another chapter. We must give all Americans who suffer from mental illness the treatment, and the respect, they deserve." (mentalhealthcommission.gov/.../FinalReport/FullReport-03.htm)

If I had been afforded any of that respect in any of this, I would not unjustly be out of my job as a Counselor at the Cunningham Children's Home.

Signed,
Elizabeth M Martin

DO NOT FEEL COMPELLED TO USE ALL THE SPACE.

Page 7

V.   RELIEF YOU REQUEST

Check below what you want the court to do for you.  You may make as many checks as you like.

( ) Should you prevail in this lawsuit, award you back pay.

( ) Should you prevail in this lawsuit, reinstate you in your old position.

( ) Should you prevail in this lawsuit, award you certain costs of suit (but not attorneys fees).

(X) Other *I am asking for if I shall prevail in this lawsuit ($175,000) in pay and damages of character. I would have made $10.88 an hour and worked 40 hours a*

VI.   JURY DEMAND

( ) YES          (X) NO

Signed this *eleventh* day of *January*, 20*10*

_____

*Miss Elizabeth M Martin*
(Signature of Plaintiff or Plaintiffs)

ADDRESS: *P.O. Box 996*
*Urbana, IL 61803-0996*

PHONE NO.: *(217) 377-9716*

7

well with Office Depot being sold or transfered owing to Todd D. Wagner. At 40 hrs a week and $10.88 an hour, I would have made $20,889.6 a year and $104,448 for five years of work. At 50 hrs a week (10 hours of overtime a week) and $10.88 a hour I would have made $26,112 a year and $130,560 for five years of work at Cunningham Childrens Home as a Counselor. A lot of employers consider being on a job a long time to be no less than 5 years of employment. I was looking to work as a Counselor at the Cunningham Childrens Home for a long time, maybe even retire from there. I am also asking for always $45,000 on top of the $130,560 for overtime pay at 50 hours a week and $10.88 an hour over the course of 5 years to include holiday and vacation pay for 5 years, more overtime pay and raises and pension pay, as well as damages for this happening to me and pain and suffering. I am asking for a total of $175,000 from the Cunningham Childrens Home, if I prevail in this law suit.

EEOC Form 161 (2/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Elizabeth Martin<br>P. O. Box 996<br>Urbana, IL 61803<br><br>**CERTIFIED MAIL  7001 0320 0005 8565 8305**    CP | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2009-48697 | Pamela  Pribble,<br>Investigator Support Asst | (312) 886-7491 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
*(signature)*    VRO

**John P. Rowe,**
**District Director**

10-19-09

*(Date Mailed)*

cc:    **CUNNINGHAM CHILDREN'S HOME**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **846-2009-48697** |

### Illinois Department Of Human Rights

*State or local Agency, if any*                                      and EEOC

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Elizabeth Martin** | **(217) 417-3109** | **11-19-1969** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Po Box 996, Urbana, IL 61803** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CUNNINGHAM CHILDREN'S HOME** | **101 - 200** | **(217) 367-3728** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1301 North Cunningham Ave,  Po Box 878,  Urbana, IL 61802** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|
| Earliest | Latest |
| | **06-30-2009** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I applied for a position with Respondent in late May early June 2009.  On ~~June 2~~, *June 22, 2009 E.M.M.* 2009, I was offered the position of Night Milieu Counselor.   On June 30, 2009, the job offer was rescinded. *E.M.M.*

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.  I also believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

RECEIVED EEOC

SEP 1 4 2009

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| X *September 8 2009*      *Elizabeth M Martin*<br>Date                    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



Kids' Needs First

**Amy Acree**

aacree@cunninghamhome.org

1301 North Cunningham Avenue
Urbana, IL 61802

(217) 367-3728
(217) 367-2896

www.cunninghamhome.org



Kids' Needs First

**Katrina Gordon**
Human Resources Specialist

kgordon@cunninghamhome.org

1301 North Cunningham Avenue
Urbana, IL 61802

(217) 367-3728 office
(217) 367-2896 fax

www.cunninghamhome.org



Kids' Needs First

**Krista Borbely**
Director of Human Resources

kborbely@cunninghamhome.org

1301 North Cunningham Avenue
Urbana, IL 61802

(217) 367-3728 office
(217) 367-2896 fax

www.cunninghamhome.org

# EMPLOYMENT OFFER

**CUNNINGHAM**
Children's Home

## SECTION I – TO BE COMPLETED BY SUPERVISOR

Offer Extended To: *Elizabeth Martin*

Position Title: *Night Milieu Counselor*       Location: *Girls (Group Home)*

Scheduled Start Date: *July 6 2009*       Orientation Date: *July 6, 2009*

Usual Schedule: *10-9a  4 on/4 off working schedule)*

**Must attend mandatory meetings and orientation training. Full-time employees must complete all required training classes within 3 orientation cycles. Part-time employees must complete all required training classes within 4 orientation cycles. If required in job description, employee must successfully complete all TCI components. Full-time employees will be eligible for benefits the first of the month after completion of 30 days of employment.**

Supervisor's Signature: _____       Date: *6/02/2009*

## SECTION II – TO BE COMPLETED BY HUMAN RESOURCES

Pay Rate:       Hourly: *$10.88* per hour   or       Salary: _____ Monthly _____ Annual

FLSA Status: _____ Exempt   *✓* Non-Exempt

Degree: *BA*       Months of Relevant Work Experience: *0*       Step on Grid: *Step pt rate*

Overtime Expectations: _____

Special Hiring Conditions: *IC* _____

**Human Resources Signature:** *Katrina teulin*       **Date:** *6/2/09*

## SECTION III – PRE-EMPLOYMENT REQUIREMENTS TO BE COMPLETED BY NEW HIRE

**Physical/TB/Drug Screening:** these pre-employment screenings must be completed before the first day of orientation.

**Proof of Education:** if you have an undergraduate or graduate degree, a certified transcript is required. The certified transcript must include:
- List of classes completed each semester
- Date degree was conferred
- Type of degree received (i.e. B.S., B.A. or MSW)

If you do not have an undergraduate degree or graduate degree, a copy of your High School Transcripts/Diploma or GED is sufficient.

**Payroll Options:** you may elect to have your pay directly deposited into a checking and/or savings account or your check will be mailed the Thursday before pay day to the address indicated on your W-4 form.

**Reference Letters:** you must provide three letters of reference. These letters may come from a previous employer, previous supervisor, clergy member, professor, etc. Letters may not come from family members.

**Proof of Employment Eligibility:** you must provide proof of employment eligibility and picture identification (i.e. copy of your driver's license, social security card, birth certificate, passport, INS Employment Authorization, etc.)

**Fingerprinting:** you must be fingerprinted by a DCFS authorized agent within 10 days of receiving authorization form. School personnel must also be fingerprinted in compliance with the Adam Walsh Act.

**Driver's Eligibility:** you must provide a copy of your current Illinois Drivers License and proof of Auto Insurance.

I understand this offer is conditional upon satisfactory completion of all necessary documentation and phases of my orientation. **I further understand that failure to supply this information within 30 days of date of employment or to meet requirements of the various childcare-licensing agencies may result in termination of this employment offer.** The information contained in this form is **not a contract** but is intended solely to give candidates for employment by Cunningham Children's Home a clarification of the initial job offer and conditions of employment. Nothing in this document is intended as a promise of employment or continued employment. All Cunningham employees are employed "at will," which means employment may be terminated by either Cunningham or the employee without cause and without following any specific procedure.

**New Hire's Signature:** X *Elizabeth M Martin*       **Date:** *June 24, 2009*

May 2008       White Copy – Personnel File       Yellow Copy – Employee       Pink Copy – Supervisor